# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA SINGH,<br><br>  Plaintiff,<br><br>  v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>  Defendant.<br>_____/ | Case No.  1:19-cv-01791-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.   INTRODUCTION

On December 24, 2019, Plaintiff Sandra Singh ("Plaintiff") filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.   BACKGROUND

On October 26, 2016, Plaintiff protectively filed an application for DIB payment, alleging she became disabled on May 23, 2015, due to left arm pain, depression, overactive bladder, sciatic

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 6, 8.)

nerve pain, osteoporosis, restless leg syndrome, high blood pressure in the eye, and preliminary breast cancer  (Administrative Record ("AR") 119, 120, 133, 253.)  Plaintiff was born on October 19, 1957, and was 57 years old as of the alleged onset date.  (AR 119.)  Plaintiff graduated high school and has past work experience as a legal assistant.  (AR 254–55.)

**A.     Relevant Medical Evidence[2]**

    **1.     Yash P. Verma, M.D.**

Dr. Verma was Plaintiff's primary care physician.  (*See* AR 346–51.)  On November 1, 2018, Dr. Verma submitted a medical source statement on Plaintiff's behalf.  (AR 569–72.)  Dr. Verma indicated that Plaintiff complained of persistent pain in her left arm, in addition to back and neck pain.  (AR 569.)  According to Dr. Verma, Plaintiff: could sit for 30 minutes at one time and for about two hours in an eight-hour workday; could stand for 15 minutes at one time and stand/walk for less than two hours in an eight-hour workday; could walk for two city blocks without rest or severe pain; needed to be able to shift positions at will from siting, standing, or walking; and needed unscheduled breaks during the workday.  (AR 570.)  Plaintiff also needed periods of walking around during an eight-hour workday—specifically every 20 to 30 minutes for about 10 minutes at a time.  (AR 570.)  Dr. Verma further opined that Plaintiff could: rarely lift and carry less than 10 pounds; rarely twist, stoop, and climb stairs; never crouch/squat or climb ladders; and use her right upper extremity to grasp, turn, and twist objects, engage in fine manipulations, reach in front of her body and overhead 60 percent of the time during an eight-hour workday, and use her left upper extremity to perform those functions either five or ten percent of the time.  (AR 571.)  Plaintiff was capable of low stress work and was likely to be absent from work due to her impairments more than four days a month.  (AR 572.)

    **2.     State Agency Physicians**

On November 30, 2016, J. Mitchell, M.D., reviewed the record and assessed Plaintiff's physical residual functional capacity ("RFC")[3].  (AR 128–30.)  Dr. Mitchell found that Plaintiff

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.  Social Security Ruling ("SSR") 96-8p.  The RFC assessment considers only functional limitations and restrictions that result

2

could: lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; occasionally climb ladders, ropes, and scaffolds; frequently crawl; occasionally reach overhead with her left arm; and frequently handle and finger with her left hand. (AR 128–30.) Upon reconsideration on February 15, 2017, H. Han, M.D., another state agency physician, reviewed the record and affirmed Dr. Mitchell's findings. (AR 141–43.)

**B.     Administrative Proceedings**

The Commissioner initially denied Plaintiff's application for DIB benefits on December 12, 2016. (AR 152.) Plaintiff's application for DIB benefits was denied again on reconsideration on March 10, 2017. (AR 158, 161.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 167.) At the hearing on December 3, 2018, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 72–78, 79–92.)

Plaintiff testified that she has trouble writing with her left hand, which is her dominant hand, and her arm frequently "gets really tired." (AR 81.) She is able to lift a gallon of milk with both arms. (AR 81.) She has difficulty reaching overhead with her left arm. (AR 91.) She wears a compression-sleeve on her left arm to help manage her pain. (AR 84.) Plaintiff stated she can perform light household chores, but she constantly needs to take breaks. (AR 85–86.) According to Plaintiff, she can engage in an activity for about 30 to 45 minutes before needing to rest for a couple of hours. (AR 86.)

Plaintiff also testified that she was being treated for varicose veins in her lower left extremity. (AR 88.) She estimated she could walk one or two blocks, and sometimes stand for about 20 to 30 minutes; other times, she could stand for only half that time. (AR 89.) She is unable to squat due to weakness in her knees. (AR 91.)

///

---

from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

**C.     The ALJ's Decision**

In a decision dated January 22, 2019, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 15–23.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 18–22.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period from October 21, 2015, the amended onset date (*see* AR 71), to December 31, 2017, Plaintiff's date last insured (step one). (AR 18.) At step two, the ALJ found Plaintiff's following impairments to be severe: right-sided breast cancer, "DCIS, ER, PR positive (duct papilloma of breast), status-post lumpectomy"; left breast cancer, status-post left breast partial mastectomy 2008; and left upper extremity lymphedema. (AR 18.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 19.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 404.1567(b) except [Plaintiff] can occasionally climb ramps and stairs, as well as crawl and reach overhead bilaterally. She can frequently handle and finger bilaterally. She can do work that does not involve climbing ladders, ropes, or scaffolds.

(AR 20.)[4] Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause some symptoms[,]" she rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record." (AR 20.)

The ALJ ultimately concluded that, given her RFC, Plaintiff was able to perform her past relevant work as an administrative assistant and was thus not disabled (step four). (AR 22.)

On January 28, 2019, Plaintiff sought review of the ALJ's decision before the Appeals Council, which denied review on October 21, 2019. (AR 1, 7.) Therefore, the ALJ's decision

---

[4] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 416.967(b). Although the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.*

4

became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

## III. LEGAL STANDARD

### A. Applicable Law

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.

1989)). "However, if a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.     Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that the ALJ erred in finding Plaintiff's anxiety and depression to be non-severe at step two and failing to further develop the record regarding those impairments, and in her assessments of Dr. Verma's opinion and Plaintiff's testimony. (*See* Doc. 15 at 10–22.) For the reasons stated below, the Court concludes that the ALJ erred in the evaluation of Dr. Verma's opinion and Plaintiff's testimony, and those errors were not harmless.

**A.   The ALJ Harmfully Erred in Evaluating Treating Physician Dr. Verma's Opinion**

### 1.   Legal Standard

The ALJ must consider and evaluate every medical opinion of record. *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018). In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th

7

Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)).  The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual."  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).

"To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions."  *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729, at *2 (E.D. Cal. Mar. 29, 2010).  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate reasons that are supported by substantial evidence."  *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–31.  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (supported by different independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes*, 881 F.2d at 751).  The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund*, 253 F.3d at 1157,[5] except that the ALJ in any event need not give it any weight if it is conclusory and supported by minimal clinical findings.  *Meanel v. Apfel*, 172 F.3d 1111, 1114

---

[5] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

8

(9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at 751.

**2. Analysis**

Plaintiff alleges—and the record reflects—that Dr. Verma was Plaintiff's treating physician. (*See* AR 346–51.) In a medical source statement submitted on Plaintiff's behalf on November 1, 2018, Dr. Verma opined to extreme limitations on Plaintiff's ability to work. (AR 569–72.)

In weighing Dr. Verma's opinion, the ALJ stated:

> The undersigned accords little to no weight to this opinion as it is vastly inconsistent with Dr. Verma's own treatment notes found at Exhibits B2F and B7F, as well as not supported by any of the other medical evidence of record. This opinion includes limitations more restrictive than those complained of or demonstrated by [Plaintiff]. It is in part vague and contradictory, for example, when referring to needed breaks lasting one to three days in a workday. Further, Dr. Verma's treating relationship with [Plaintiff] as described in the record does not document observations, clinical signs or findings that correlate with the opined restrictions for the durational requirement.

(AR 22).

In sum, the ALJ rejected Dr. Verma's opinion because it was vague and contradictory and inconsistent with Dr. Verma's own treatment notes, the objective medical record, and Plaintiff's own reported limitations. Dr. Verma's opinion is also contradicted by the opinions of the state agency physicians. The state agency physicians opined, *inter alia*, that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently (AR 128–30, 141–43), whereas Dr. Verma opined that Plaintiff could rarely lift and carry less than 10 pounds (AR 571). Thus, the ALJ was required to set forth "specific and legitimate reasons," supported by substantial evidence, for rejecting Dr. Verma's opinion. *Trevizo*, 871 F.3d at 675.

Although the ALJ offered reasons for rejecting Dr. Verma's opinion, the ALJ's rationale for each of its reasons is lacking. In rejecting the opinion as vague and contradictory, the ALJ pointed only to Dr. Verma's ambiguous response in his medical source statement that Plaintiff would need to rest "1–3 days before returning to work," to the question regarding the length of time Plaintiff would need to take unscheduled breaks during the work day. (AR 21, 570.) While the ALJ could properly reject that specific limitation based on that response, it was an insufficient basis to reject the entirety of Dr. Verma's opinion, especially considering that the opinions of treating physicians

are generally accorded great deference. *See Orn*, 495 F.3d at 633–34 (concluding that a treating physician's opinion is entitled to great weight even when not deemed controlling).

The analysis for the ALJ's remaining reasons—that Dr. Verma's opinion is inconsistent with his own notes, the medical record, and Plaintiff's own reported limitations—is conclusory and does not rise to the specific and legitimate standard as set forth by the Ninth Circuit. To reject an opinion as inconsistent with the physician's notes or medical record, the "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). The ALJ must "set[ ] out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and mak[e] findings." *Magallanes*, 881 F.2d at 751 (citation omitted).

Here, the ALJ did not identify any specific findings that she believed were inconsistent with the limitations identified by Dr. Verma, beyond stating that Dr. Verma's opinion was "vastly inconsistent with [his] own treatment notes found at Exhibits B2F and B7F," with no additional explanation. The ALJ also cursorily asserted that Dr. Verma's opinion was inconsistent with Plaintiff's reported limitations without explaining which of Dr. Verma's limitations contradicted which parts of Plaintiff's testimony. Because the ALJ failed to elaborate on its reasoning and identify specific conflicts with the medical record and Plaintiff's statements, the Court concludes that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Verma's opinion.

### 3. Harmless Error Analysis

The Court now turns to the analysis of whether this error by the ALJ was harmless. The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social Security Act context." *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054); *see also Garcia v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error analysis applies where the ALJ errs by not discharging their duty to develop the record). As such, "the court will not reverse an ALJ's decision for harmless error." *Tommasetti*, 533 F.3d at 1038 (citing *Robbins*, 466 F.3d at 885).

An error is harmless "where it is inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted); *see also Treichler v. Comm'r of Soc.*

10

*Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (stating that an error is also harmless " 'if the agency's path may reasonably be discerned,' even if the agency 'explains its decision with less than ideal clarity' " (quoting *Alaska Dep't of Envtl. Conservation v. EPA*, 540 U.S. 461, 497 (2004)). "In other words, in each case [courts] look at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. "[T]he nature of [the] application" of the "harmless error analysis to social security cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in light of the circumstances of the case.' " *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) (quoting *Molina*, 674 F.3d at 1121). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki*, 556 U.S. at 409 (citations omitted).

Here, the Commissioner does not contend that any error by the ALJ in evaluating Dr. Verma's opinion was harmless, and the record establishes that the ALJ's error was not harmless. If the ALJ had properly evaluated Dr. Verma's opinion and included any of the significant limitations that Dr. Verma opined, that may have changed the disability determination. Thus, the error was not "inconsequential to the ultimate nondisability determination," *see Molina*, 674 F.3d at 1115, and was not harmless.

**B.     The ALJ Harmfully Erred in the Evaluation of Plaintiff's Testimony**

   **1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834)).

**2. Analysis**

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some symptoms." (AR 20.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 20.) Since the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

The ALJ gave only one specific reason as to why Plaintiff's testimony was less than credible: the testimony was inconsistent with the objective medical evidence. (AR 20.) The Court finds this is not a specific, clear and convincing reason to discount Plaintiff's testimony because the ALJ may not reject a claimant's subjective statements for the sole reason that the testimony is inconsistent

with the objective evidence. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493–94 (9th Cir. 2015).

The ALJ also failed to specify which statements she found to be less than credible and the reasons for the lack of credibility. Without such specification, the Court is left to speculate as to which statements the ALJ intended to discount and how they are undermined by the evidence—which the Court may not do. *See id.* at 494–95 ("We cannot review whether the ALJ provided specific, clear and convincing reasons for rejecting [the claimant]'s pain testimony where, as here, the ALJ never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony . . . . In sum, we cannot substitute our conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.").

The Court also notes that the ALJ's proffered reason for discounting Plaintiff's testimony—that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision"—has been criticized by courts, including the Ninth Circuit, as "boilerplate language." *See, e.g.*, *Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017) (citing *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012)). The Ninth Circuit found this kind of language to be "problematic," as it "subverts the way an RFC must be determined relying on credible evidence, including testimony." *Id.* "[I]nclusion of [the] flawed boilerplate language" "does not . . . add anything to the ALJ's determination." *Id.* Because the ALJ included only the boilerplate language and did not specifically identify "the reasons explained in the decision," her analysis of Plaintiff's subjective complaints was flawed.

In an effort to salvage the adverse credibility determination, the Commissioner points to the state agency physicians' opinions and contends that the ALJ discredited Plaintiff on the additional basis that her testimony was inconsistent with the medical opinion evidence. (*See* Doc. 19 at 16.) This, however, was not a reason expressly articulated by the ALJ. *See, e.g.*, *Orn*, 495 F.3d at 630 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm on a ground upon which he did not rely."). Because this Court's review is limited to the rationale provided by the ALJ, the post-hoc rationalization advanced by the Commissioner cannot justify the ALJ's rejection of Plaintiff's subjective testimony. *See Bray*, 554 F.3d at 1225 ("Long-

standing principles of administrative law require [the court] to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) ("A reviewing court can evaluate an agency's decision only on the grounds articulated by the agency.").

### 3. The ALJ's Error Was Not Harmless

As with the ALJ's erroneous assessment of Dr. Verma's opinion, the Commissioner does not contend that any error by the ALJ in evaluating Plaintiff's credibility was harmless (*see* Doc. 19 at 14–16), and the record establishes that the ALJ's error was not harmless. Had the ALJ credited Plaintiff's testimony regarding her functional abilities and included appropriate limitations in the RFC, that may have changed the disability determination, especially given that Plaintiff alleged fairly significant limitations, including needing several breaks throughout the day. (*See* AR 81–91.) The error was not "inconsequential to the ultimate nondisability determination" and was thus not harmless. *Molina*, 674 F.3d at 1115.

## C.   The ALJ's Errors Warrant Remand for Further Proceedings

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler*, 775 F.3d at 1099 (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id.* at 1100–01 (citations omitted); *see also id.* at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id.* (citations omitted). Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award

benefits is in [the court's] discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

The Court finds that the "credit-as-true" exception to the "ordinary remand rule" is inapplicable in this case because additional administrative proceedings would be useful. If the ALJ changes her evaluation of Dr. Verma's opinion and/or Plaintiff's testimony, she should incorporate any warranted additional limitations in the RFC. Conversely, there may be valid reasons the ALJ can offer for discounting the opinion and testimony. *See Voisard v. Berryhill*, No. 2:17–CV–1023-EFB, 2018 WL 4488474, at *5 (E.D. Cal. Sept. 19, 2018) ("That the ALJ failed to provide sufficient reasons for discounting plaintiff's subjective testimony in this instance does not compel a finding that he is unable to do so.").

Even if the ALJ decides to credit as true some or all of Dr. Verma's opinion and/or Plaintiff's testimony and adjust her RFC determination for Plaintiff, the ALJ may still conclude that Plaintiff is not disabled because she has the RFC to perform the requirements of other work that exists in significant numbers in the national economy. The ALJ may also elect to further develop the record, if deemed necessary. Further proceedings would therefore be useful to allow the ALJ to resolve these outstanding issues before a proper disability determination can be made. *See Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir. 1988).

On remand, the ALJ should reevaluate Dr. Verma's opinion and Plaintiff's symptom testimony and address any necessary changes to the RFC determination. If the ALJ again discounts the opinion and Plaintiff's subjective symptoms, the ALJ can then provide an adequate discussion of the specific limitation she is discounting and the specific evidence that contradicts that limitation. *See Payan v. Colvin*, 672 F. App'x 732, 733 (9th Cir. 2016). The ALJ must also reevaluate her conclusions at Steps Four and Five of the disability determination in light of any changes to Plaintiff's RFC.

**D.     The Court Declines to Determine Plaintiff's Remaining Assertion of Error**

As the Court finds that remand is appropriate for the ALJ to reconsider Dr. Verma's opinion and Plaintiff's testimony, the Court does not determine Plaintiff's additional assertions of error regarding the ALJ's failure to further develop the record and the ALJ's determination at step two that Plaintiff's depression and anxiety were non-severe, since Plaintiff contends that determination

was based in part on the ALJ's erroneous rejection of Dr. Verma's opinion.  (*See* Doc. 15 at 14–18); *cf. Newton v. Colvin*, No. 2:13–cv–2458–GEB–EFB, 2015 WL 1136477, at *6 n.4 (E.D. Cal. Mar. 12, 2015) ("As the matter must be remanded for further consideration of the medical evidence, the court declines to address plaintiff's remaining arguments"); *Willmett ex rel. A.P. v. Astrue*, No. 2:10–cv–01201 KJN, 2011 WL 3816284, at *1 (E.D. Cal. Aug. 25, 2011) ("Because this legal error warrants remanding this matter for further proceedings, the undersigned does not reach the remainder of [the] plaintiff's arguments seeking reversal of the ALJ's and Appeals Council's decisions.").

## V.     CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with this Order.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Sandra Singh and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **March 19, 2021**                           /s/ *Sheila K. Oberto*
                                                        UNITED STATES MAGISTRATE JUDGE